[No. 7518 and 7519.]

THE PEOPLE v. GIBSON ET AL.

1. STATUTES—*Construction—Statutes in Pari Materia*—The statutes of the territory of Colorado establishing the grand jury system and authorizing prosecutions by indictment, that establishing the office of county attorney, and that establishing the office of district attorney (Rev. Stat. 1868, c. 24), and prescribing their respective duties and authority; that providing for the appointment by the court of a district attorney pro tem., in certain cases (G. L. 1877, secs. 1897-1899, Rev. Stat. 1908, secs. 2109-2111); the provisions of the constitution creating the office of attorney general, and the statute prescribing his duties (G. L. 1877, sec. 1103 et seq., Rev. Stat. 1908, sec. 6168 et seq.); the act providing for the prosecution of offenders by information (Laws 1891, 240, Rev. Stat. 1908, secs. 1957-1968), and the amendatory act of 1893 (Laws 1893, c. 66); and the act providing that a grand jury shall not be summoned unless specially ordered by the court (Laws 1891, 253, Rev. Stat. sec. 3695), are to be taken together as *in pari materia*, and construed, if possible, so as to be consistent and harmonious one with the other, and in their several parts.

And the nature of the several acts, their respective titles, the history of each, and the previous state of the law, are to be considered.

2. ATTORNEY GENERAL—*Power in the Prosecution of Public Offenses*—When thereunto required by the governor under sec. 6168 of the Revised Statutes, the attorney general may subscribe, present and prosecute an information against a public offender, with the same powers as the district attorney of the proper district.

*Error to Fremont District Court.*—Hon. CHARLES A. WILKIN, Judge.

Hon. BENJAMIN GRIFFITH, attorney general, Mr. ARCHIBALD A. LEE, deputy attorney general, for plaintiff in error.

Messrs. HAYT, DAWSON & WRIGHT, Messrs. McLAIN & PEASE, Messrs. WALDO & STUMP and Mr. H. R. WALDO, for defendants in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

The attorney general of the state, in the name of the people thereof, filed in the court below, by its leave first had and obtained, two informations purporting to charge D. E. Gibson, W. M. Gibson, Herman Loehr, John Cleghorn and A. R. Frisbie with the commission of certain felonious offenses.

In one information they are charged with having unlawfully conspired to obtain from the state of Colorado, the sum of $25,000, by falsely and fraudulently representing to the board of commissioners of the Colorado state penitentiary that goods, wares and merchandise of such value were sold and delivered to the state of Colorado for use in the state penitentiary. In the other, they are charged with having obtained such sum of money from the state of Colorado by false pretenses.

The informations are substantially in the form prescribed by the statute, except the name of the attorney general appears therein instead of the district attorney, and the recitals that the governor of the state requested the attorney general to prosecute the actions. Capiases were issued, defendants arrested, and subsequently admitted to bail. Thereafter motions were filed questioning the validity of the informations and proceedings thereunder, upon the ground, that the attorney general had no power to commence and prosecute the actions by informations. The court sustained the motions, discharged the defendants and dismissed the proceedings. The people bring the cases here for review.

The sole question for determination is, whether the attorney general had authority to charge by information, in the name of the people, the commission of a felony, and to otherwise prosecute the actions in the district court.

Defendants contend that there is no analogy between the office of attorney general of this state and the officer known as the attorney general under the common law of England, and that, therefore, no inherent common law right exists in the attorney general of this state to prosecute criminal actions of any kind, and that such officer has not, by constitutional or statutory enactment, been invested with the power to prosecute felonies by information.

While neither conceding nor denying the correctness of the contention as to the non-existence of common law powers in the attorney general, the plaintiff maintains that the written law vests the power in, and makes it the duty of such official to prosecute by information, those guilty of the commission of felonies and other crimes, when requested so to do by the governor or the general assembly.

In arriving at a correct conclusion as to the powers of the attorney general, we deem it helpful to refer briefly to some of the territorial and state legislation pertaining to the prosecution of crimes.

In 1861 the council and house of representatives of the territory established the grand jury system, and authorized the institution of prosecutions by indictment. It also established the office of county attorney in each county, and provided for the election of an incumbent thereof for a designated term. He was required to appear in the district court in his county and prosecute and defend on behalf of the territory or county, all suits, indictments, applications or motions, civil or criminal, to which the territory or county was a party, and, *inter alia,* to draw and sign all indictments or other pleadings connected with his office, and whenever required by the grand jury, to appear before that body and examine witnesses, etc.

By chapter 24, R. S. 1868, the office of county attorney was abolished and the office of district attorney for each judicial district established. The district attorney was, *inter alia,* required to appear in behalf of the territory and the several counties of his district in all indictments, suits and pro-

ceedings pending in the district court in any county within his district wherein the territory or the people thereof, or any county of his district was a party. He was also required to appear in the supreme court on writs of *habeas corpus* sued out by persons charged with, or convicted of public offenses before the judge of his district. Furthermore, he was commanded to discharge all duties theretofore imposed by law upon the county attorney and not enumerated in the act of 1868. A clause in section 4 of the act, defining his duties, reads: "Nothing contained in this section shall be so construed as to prevent the county commissioners of any county from employing one or more attorneys to appear and prosecute or defend in behalf of the people of the territory or such county, in any such indictment, action or proceeding." The act became effective in one judicial district immediately upon its approval, while in other districts it did not become effectve until a subsequent date, the county attorneys in the meantime necessarily performing the duties of prosecuting officials therein as before.

By an act of the territorial legislature of 1876 it was provided that: "If the district attorney be interested or shall have been employed as counsel in any case which it shall be his duty to prosecute or defend, the court having criminal jurisdiction may appoint some other person to prosecute or defend the cause," or "if he be sick or absent, such court shall appoint some person to discharge the duties of the office until the proper officer resume the discharge of his duties;" and "the person thus appointed shall possess the same power   *   *   *   as the proper officer would if he were present. Sections 897, 898, 899, G. L.; sections 2109, 2110, 2111, R. S. 1908.

Thereafter the constitution was adopted and the office of district attorney became an office thereunder, the duties of which were to be as provided by law. Art. VI, sec. 21, Const. And by section 1 of the schedule to the constitution, R. S. 1908, p. 60, the duties pertaining to the territorial office of

district attorney became the duties pertaining to such office under the constitution, the word "state" having been inserted in the territorial act in place of "territory," in accordance with an act approved March 22, 1877, under which the general laws were compiled and published.

The constitution also created the office of attorney general, made the incumbent thereof an executive officer of the state, and required him to perform such duties as may be prescribed by the constitution or by law. Art. IV, sec. 1. No specific duties pertaining to the matters here under consideration are prescribed by the constitution to be performed by the attorney general. However, art. III of an act of the general assembly, approved February 27, 1877, sec. 1103, *et seq.*, G. L.—sec. 6168, *et seq.* R. S. 1908—prescribes some of the duties to be performed by that official. Among others therein prescribed, he is required to "appear for the state, prosecute and defend all actions and proceedings, civil and criminal, in which the state shall be a party or interested, when required to do so by the governor or general assembly."

The above and foregoing constitutional and statutory enactments constituted the only written law pertaining to the matter here under consideration, until the enactment of 1891 authorizing prosecutions by information. That act is entitled: "An act providing for the prosecution and punishment of crimes, misdemeanors and offenses by information." The first section thereof invests the courts of the state with the same power and jurisdiction to hear, try and determine prosecutions upon information and to do all acts in connection therewith as in cases of prosecution under indictment. The second section, as far as it has any bearing upon the matter before us, provides that "all informations shall be filed in term time, in the court having jurisdiction of the offense specified therein, by the district attorney of the proper county as informant, and his name shall be subscribed thereto either by himself, or by his deputy." The third section insures to the defendant the same rights as to all proceedings therein, as he

would have if prosecuted for the same offense under indictment. The fourth section, *inter alia,* provides, "that the informations may be in the following form," setting forth a form in which the district attorney appears as the charging officer. The fifth section is as follows: "All provisions of law applying to prosecutions upon indictment, to writs and process therein, and the issuing of service thereof, to motions, pleadings, trials and punishments, or to passing or execution of any sentence, and to all other proceedings in cases of indictment, whether in court of original or appellate jurisdiction, shall to the same extent and in the same manner as near as may be, apply to informations and to all prosecutions and proceedings thereon." Section nine empowers the judge of the court having jurisdiction to require the district attorney, in extreme cases upon affidavit filed with him of the commission of a crime, to prosecute any person for such crime.

While the act of 1891 permitted the filing of informations when verified by the oath of the district attorney or his deputy, or by the oath of some person competent to testify as a witness in the case, under an amendatory act of 1893, S. L. p. 116, it was provided that, "In all cases in which the defendant has not had or waived a preliminary examination there shall be filed with the information the affidavit of some credible person verifying the information upon the personal knowledge of affiant that the offense was committed." The latter act also provided that the information shall be sufficient if it can be understood therefrom, *inter alia,* "that it is presented by the person authorized by law to prosecute the offense."

The same general assembly that passed the act of 1891 authorizing prosecutions by information, amended the law which theretofore required the calling of a grand jury at each term of the court, so that thereafter grand juries should not be required to attend the sitting of any court in any county unless specially ordered by the court having jurisdiction to make such order. S. L. 1891, p. 253; R. S. 1908, sec. 3695.

It is certain that these several legislative acts are all parts of the same system of laws providing for the prosecution of crimes, misdemeanors and offenses, naming the parties who shall prosecute, prescribing the means and methods to be pursued therein, and must necessarily be construed in *pari materia*. They are parts of one system, governed by one spirit and policy and must be construed, if possible, so as to be consistent and harmonious one with the other and in their several parts.—In *Re Thomas,* 16 Colo. 441, 445. The fact that they were considered and enacted by the legislative authority at different dates, under distinct and varied aspects of the common subjects, is of no concern. Whenever the earlier and the later provisions of the law can stand together, they will be permitted to do so.—*Kollenberger v. The People,* 9 Colo. 233, 235; *Stermer v. La Plata* Co., 5 Colo. App. 379, 383.

"Where enactments separately made are read in *pari materia,* they are treated as having formed, in the minds of the enacting body, parts of a connected whole, though considered by such a body at different dates, and under distinct and varied aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws, and connect them them in a symmetrical system. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and, so far as still in force brought into harmony, if possible, by interpretation."—2 Lewis' Sutherland Stat. Const., p. 853; *Sales v. Barber A. P. Co.,* 166 Mo. 671, 678.

Moreover, in harmonizing different legislative acts so as to connect them in a symmetrical system, and arrive at the legislative intent embodied in the whole law, the nature of the

several acts, including their respective titles, the history of such enactments, and the state of the law when the several acts were passed, are properly considered. "This may result sometimes in the words used in a statute being transposed, or in some of them being omitted or ignored, or in an interpolation of others where necessary to affect the manifest legislative purpose."—*Commonwealth v. Barney,* 74 S. W. (Ky. Ct. App.) 181, 184.

As said in *County Commissioners v. Lunney,* 46 Colo. 403, 415: "In the interpretation of a statute the legislative purposes and objects are always to be borne in mind, and an indispensable requisite is to first inquire what object was sought to be accomplished by it. The intent of the statute is the law, and general words may be restrained to it, and those of a narrower import may be expanded to embrace it to effectuate that intent. * * * The intention of an act will prevail over the literal sense of its terms."

When the act prescribing the duties of the attorney general became effective, the method for prosecuting felonies was by means of an indictment returned by a grand jury. The law, however, required the indictment to be signed by the district attorney and the latter to appear in the courts of his district and prosecute in behalf of the people. Such being the state of the law, it is clear that when the legislature empowered the attorney general to prosecute under certain conditions, that official, when the required conditions existed, could do each and everything the district attorney might have done in the premises. Though the letter of the law required one official alone to do certain things, its spirit permitted another to do and perform the same or similar acts under certain conditions.

This principle is recognized and applied in many cases. In 1855 the legislature of the territory of Kansas created the office of district attorney for each judicial district, and prescribed his duties. He was required to appear in each county at the district court and prosecute and defend, on behalf of the territory or county, all suits, indictments, applications or

motions, civil or criminal, in which the territory or county should be a party, and, among other things, to draw and sign all indictments or other pleadings connected with his office. A code of criminal procedure, adopted by the same legislature made it the duty of the attorney prosecuting in the county to attend any grand jury whatever required, and aid in various ways in the conduct of its proceedings, but no reference was made in such act to the matter of signatures to indictments. In 1858 such territorial legislature created the office of county attorney for each county organized for judicial purposes, requiring the incumbent of the office to appear in the several courts of the county and prosecute or defend actions, attend the sittings of the grand jury when required, and draw bills of indictment, and provided for the election of such county attorneys at the general election following the session of the legislature. The same legislature adopted a provision amendatory of the code of criminal procedure, requiring all indictments to be signed by the prosecuting attorney. This act took effect immediately after its passage, so necessarily the district attorneys remained in office until after the election of county attorneys under the new system. Upon admission into the Union, Kansas abolished the office of county attorney and returned to the former system of district attorneys. It also created the office of attorney general, and by an act of the legislature in 1861, in defining the duties of that official, provided, inter alia, that he should, whenever required by the governor or either branch of the legislature, appear for the state and prosecute and defend in any court or before any officer in in any case or matter, civil or criminal, in which the state might be a party or interested. In 1864 it abolished the office of district attorney and restored the office of county attorney, but the statute relating to the signing of indictments remained unmodified. The supreme court in *State v. Nulf*, 15 Kan. 404, had held that, "Under the laws of Kansas, the 'prosecuting attorney' is always the county attorney. (G. S. 283, 284, secs. 135, 136, 137). That is, every criminal action,

prosecuted in the name of the state, must be prosecuted by the county attorney, who is the public prosecutor. Therefore, for the purpose of prosecuting criminal actions, the prosecuting attorney and the county attorney is one and the same person."

Under this state of the law the attorney general of Kansas, claiming to act upon request of the governor, signed an indictment and otherwise undertook to prosecute in the case of *State v. Bowles,* 70 Kan. 821, decided in 1905. His authority to sign indictments was challenged, and the court, after remarking upon the necessity of a state government equipped with sufficient power to protect public rights and redress public injuries throughout the entire state, independent of local authorities who might be indifferent, incapable, or even antagonistic, held, that the purpose or legislative intent "was to make the authority of the government felt, through its chief law officer, in every part of its territory, if the chief executive or either branch of the legislature should determine it to be necessary," saying: "The language of the statute indicates that the intention was to grant plenary power to the attorney general to this end, and he was invested with full authority to use all the means afforded by the law to meet the requirements of any situation and fully protect the interests of the state. When directed by the governor or either branch of the legislature to appear and prosecute criminal proceedings in any county he becomes the prosecuting attorney of that county in those proceedings, and has all the rights that any prosecuting officer there may have, including those of appearing before the grand jury, signing indictments, and pursuing cases to final determination."

The law of North Dakota made it the duty of the attorney general, *inter alia,* "to consult with and advise the several state's attorneys in matters relating to the duties of their office; and when in his judgment the interests of the state require it, he shall attend the trial of any party accused of crime and assist in the prosecution." Another statute made it the duty of the state's attorney to appear before the grand jury to give

information or advice and to interrogate witnesses, but provided that no other person shall be permitted to be present during the session of the grand jury except the members thereof, and a witness actually under examination. Under this state of the law the attorney general requested the district judge of a certain district to call a grand jury to consider a particular matter. This was done and the attorney general attempted to appear before the grand jury for the purpose of presenting to that body the matters to which he had called the attention of the court. The trial court denied his right to do so. The matter was carried to the supreme court, where, in *State v. District Court*, 124 N. W. 417, 424, it was held that, notwithstanding the language of the statute, to the effect that no person other than the state's attorney might go before the grand jury, the attorney general might do so under the authority given him by law to assist the state's attorney. The court therein said: "If he can not go before the grand jury, then his authority to institute and prosecute cases and to prosecute any violation of the several laws hereinbefore mentioned, is for naught."

The following cases are analogous in principle: *State v. District Court*, 22 Mont. 25; *State v. Robinson*, 101 Minn. 277, 289. In the last case cited the statute considered, provided that "Every county attorney shall prosecute all cases under this chapter arising in his county." The court said: "The statute under consideration, imposing specific duties upon county attorneys in the matter of its enforcement, is in no proper view a limitation upon, nor does it exclude, the general authority of the attorney general upon the same subject."

So under the law of this state, district attorneys are specifically authorized, *inter alia*, to appear in all indictments, criminal cases and proceedings which may be pending in the district court of their respective counties. Nevertheless, general authority is imposed upon the attorney general to appear and prosecute in all cases wherein the state is a party or interested when required so to do by the governor or general as-

sembly.: The two provisions are not inconsistent. They may stand together. The specific duty imposed upon the district attorneys in no wise limits or excludes the general authority of the attorney general upon the same subject.

However, as under the constitution no power existed in district attorneys or in the attorney general to prosecute felonies by information, it is argued that such power was conferred by the act of 1891 exclusively upon the district attorneys or their representatives, and can be exercised by no one else. If the words "district attorney" as used in the act can not be construed to include "public prosecutor," the contention is doubtless correct. As a general rule, where by statute, authority is given to a particular officer, its exercise by any other officer is forbidden by implication. However, when we apply the well-known rules of construction to the constitutional and statutory provisions constituting the system by which criminal offenses are to be prosecuted in this state, we have no doubt the words "district attorney" found in the information act must be construed to mean "public prosecutor" authorized to prosecute in any particular case. Sec. 8 of art. II of the constitution recognizes but two methods whereby a person may be proceeded against criminally in the courts: the one method is by indictment; the other, by information, and until otherwise provided by law a prosecution for a felony could be by means of the former method only. Each of these methods was well-known and understood at the time of the adoption of the constitution, and there is no more uncertainty as to what was meant by the word "information" used therein than there is as to what was meant by the use of the word "indictment." An information is essentially a written accusation of crime preferred by the public prosecuting officer without the intervention of a grand jury. It is used in the constitution in the common law sense of the term, that is, an accusation preferred, as at common law, by the public prosecutor. As the purpose of the information act, together with that dispensing with the calling of a grand jury, unless

specially ordered by the district court, was to change or regulate the system of instituting criminal prosecutions in courts of record by substituting informations as to the ordinary mode of procedure in the place of indictments,—In *Re Dolph*, 17 Colo. 35, 39,—and the district attorney was, and is the ordinary prosecuting officer, the use of his name was quite natural in the former act relative to the authentication of the information, and in no sense excludes the exercise of the power there conferred by another who is as much the public prosecutor, under certain conditions, as the district attorney himself. As said in the *Town of Trinidad v. Simpson*, 5 Colo. 65, 66: "The maxim, *expressio unius est exclusio alterius* is not of universal application in the construction of statutes. The legislative intention is to be taken according to the necessity of the matter, and according to that which is consonant to reason and sound discretion."

*Williams v. The People*, 26 Colo. 272, was a prosecution for perjury in which the district attorney had been of counsel in a civil case, during the trial of which the alleged perjury was committed. The information was signed and presented by a special prosecutor appointed under the provisions of the Territorial Act of 1876, *supra*. The right of the special prosecutor to sign and file the information was challenged. It was argued in the briefs there filed by the plaintiff in error that as the information act provides for the filing of informations by the district attorney or his deputy, the power was exclusive and the alleged information was, in fact, no information at all. The authority of the special prosecutor in that case, like the authority of the attorney general in the case at bar, rested primarily upon a statute enacted long prior to the information act, at a time when prosecution of felonies by information was impossible. We, however, held in that case that the special prosecutor, having been appointed by the court, had the right to sign his own name to the information, and that such an instrument so signed, was valid. When the court in any case, exercising its powers under the law, appoints a special prose-

cutor, the latter becomes, to all intents and purposes, the district attorney. He, nevertheless, exercises such powers in his own name. Such is the effect of the Williams' case. So, when the governor or the general assembly requires the attorney general to prosecute a criminal case in which the state is a party, he becomes to all intents and purposes the district attorney, and may in his own name and official capacity exercise all the powers of such officer, for he is then, and in that case, the public prosecutor. Being authorized and empowered to appear and prosecute, he can do each and everything essential to prosecute in accordance with the law of the land. When prosecution by information was authorized in accordance with the constitutional permission, the signing and filing of informations became essentially an act in the process of prosecution, without which the full measure of power conferred to prosecute could not be exercised. We have heretofore held that "to prosecute" is "to proceed against judicially." *Brooks v. Bates,* 7 Colo. 576, 580. It is "the act of conducting or waging a proceeding in court; the means adopted to bring a supposed offender to justice and punishment by due course of law. It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information." —*State v. Bowles, supra.*

Believing as we do that the attorney general had full power and authority to sign and file the informations as disclosed by this record, it is unnecessary to consider the matter further. The cases, in accordance with the rule applied in *U. S. v. Keitel,* 221 U. S. 370, 399, are, therefore, remanded with instructions to reinstate the same, overrule the motions to quash in each case, and proceed therewith in accordance with the law. *Reversed and Remanded.*

Decision *en banc.*

·CHIEF JUSTICE CAMPBELL and Mr. JUSTICE BAILEY not participating.

Decided June 3, A. D. 1912.   Rehearing denied July 1, A. D. 1912.