## ROPER et al. v. WINNER et al.
### No. 12340.

Court of Civil Appeals of Texas.
San Antonio.
Oct. 17, 1951.

Rehearing Denied Nov. 14, 1951.
Further Rehearing Denied Dec. 12, 1951.

Jack Davis, Herbert Schenker, San Antonio, for appellants.

Archer & San Miguel, San Antonio, for appellee.

POPE, Justice.

Appellees' night club was closed on orders of the Fire and Police Commissioner because of a defective roof. If any other reason existed for the closing order, it has not been presented to us in the record or briefs. The trial court temporarily enjoined the Fire and Police Commissioner, the Chief of Police, the City Fire Marshal, the City Building Inspector and the Chief of the Vice Squad of the City of San Antonio, and this is an appeal from that order. Until a trial may be had on the merits of the case, those persons were enjoined from harassing and intimidating the patrons of appellees' night club, from searching the patrons without search warrants in the absence of probable cause, and from closing the night club, as was done, on the grounds that the premises did not comply with the City Building Code. Appellees are Willie Winner and Don Alberts.

■ Appellants' brief complains about the court's overruling their special exceptions, but we find no record where the exceptions were urged upon the court or ruled on at all. We think the exceptions were waived. Rule 90, Texas Rules of Civil Procedure; Gregory v. Reynolds, Tex.Civ. App., 219 S.W.2d 107; Lott v. Van Zandt, Tex.Civ.App., 107 S.W.2d 761.

■ Evidence was heard on the hearing for the temporary injunction, but the appellants have not brought that record of evidence before us on appeal. The only evidence before us is an exhibit consisting of a book entitled, "Uniform Building Code." Had the evidence been in support of the position taken by the appellants, surely it would have been brought forward for us to examine; and in its absence we shall presume that the evidence offered at the hearing supports the unchallenged statements in the briefs, the pleadings and the trial court's judgment. Sarris v. Christie, Tex.Civ.App., 217 S.W.2d 99; Worthen v. Peoples Loan & Homestead Co., Tex.Civ. App., 150 S.W.2d 830; Scott v. Scott, Tex.

Civ.App., 116 S.W.2d 1163; Connor v. Connor, Tex.Civ.App., 113 S.W.2d 298. This appeal is still further narrowed in its scope of inquiry since the officials rely entirely upon the Building Code as their source of authority to do the things enjoined by the trial court.

According to the record, on June 22, 1951, the Fire & Police Commissioner caused a sign to be nailed over the entrances to appellees' place of business reading: "The Nite Club has been closed by orders of Commissioner Roper, due to the fact that the roof of the building was unsafe and therefore constituted a nuisance." Appellees immediately contacted appellants and asked the nature of the complaint about the roof on the building, which building was a new building; but the appellants refused to answer. This appeal, therefore, concerns the powers of the Fire & Police Commissioner to close down a place of business under the San Antonio Building Code.

■ We have examined the Building Code and find that it provides for the enforcement of its terms in either of two methods. The city may pursue the route of criminal prosecution for violation of its provisions with penalties amounting to as much as a fine of $200 each day the faulty building condition exists. No resort to the enforcement of the code by criminal prosecution was undertaken. The code grants still another method of enforcement and of compelling compliance. Section 203 of that code declares unsafe buildings to be public nuisances, but permits owners to repair, rehabilitate or demolish them, "in accordance with the procedure of this Section." In bold face type the next subdivision of that section requires that notice be given to the owner in writing, stating the defects complained about. "This notice shall require the owner, within 30 days, to commence either the required repairs or improvements or demolition and removal of the building or structure or portions thereof * * *." That notice must be served upon the owner by personal service, or, in the event he cannot be found, by registered mail. The Building Official, in addition to giving such notices to the owner in writing

stating the defects, is empowered to post a sign on the entrance to the business stating: "Do not enter. Unsafe to Occupy. Building Department, City of San Antonio." The purpose of the Building Code, as expressed in the Code, is to safeguard life, limb, health, property, and the public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures within the city.

■ We find no power reposed in the Fire & Police Commissioner to cause the closing order to be posted at the entrance of appellees' building. The City of San Antonio granted that power to the Building Official, who, it would seem, is better qualified to understand and pass on the condition and construction of buildings. Even the powers of the Building Official have been stated in the Building Code, and they are measured by the terms of that grant. Those powers "must be executed in the manner directed and by the officer specified." 43 Am.Jur. Public Officers, Sec. 249; People v. Gibson, 53 Colo. 231, 125 P. 531. The right to take action against owners of buildings depends upon legislation which is here embodied in the City Building Code, and it fails to authorize such action as was undertaken by the city officers. The officers are not without authority to proceed as the ordinance permits; they are without authority to proceed otherwise. Department of Insurance v. Church Members Relief Ass'n, 217 Ind. 58, 26 N.E.2d 51, 128 A.L.R. 635.

We find no power delegated to any one to close the doors of any establishment without complying with the other provisions of the same section which require that notice in writing be given the owners. No notice was ever given the owners. No statements of the defects in the building were ever furnished. No opportunity to correct the building defects was afforded. When inquiry was made, the information was refused. The premises were closed and the owners were put out of business, except for the trial court's granting the temporary injunction. The doors were closed without notice, without hearing, whether the owners were guilty or innocent, right or wrong, with no opportunity to correct the defects, and contrary to and in excess of the method required by the very law invoked by the authorities here sued.

It is urged that equity does not enjoin the prosecution and punishment of offenses under penal ordinances, and we agree with that principle. What law is here being enforced? If it be the Building Code, then the proper official in the proper manner must do so. The record before us does not show that the owners are charged or about to be charged with any violation. They have simply been closed up. Canon City v. Manning, 43 Colo. 144, 95 P. 537, 17 L.R.A.,N.S., 272. If they are charged with any violation, they were not informed about it. The Code provided effective pains and penalties for violations and a method to compel compliance by building owners, but those methods were not used and that power was not exercised. We have been cited to no law permitting what was here done, nor have we been able to find it.

■ Appellants have created an extra-legal remedy, have then found appellees guilty in some sort of ex parte method, have invoked severe sanctions against them so as to put them out of business, and have afforded them no opportunity to be heard, tried, or correct any faults. This is not a suit to enjoin the enforcement of the law. It is a suit to require enforcement of the law. It is a suit to prohibit self-made, self-tried, and self-executed law. The action here complained against is the excessive use of authority, and equity will intervene when an officer transcends lawful bounds. 28 Am.Jur., Injunctions, § 239.

The executive and judicial branches of our government do not make the laws and create actions against the liberty and property of citizens, but are only instruments to enforce the laws which the law-making departments have crystallized into a mandate from the social force. To close the doors of appellees' property as was here done, to borrow a phrase from Chief Justice Cureton, writing for the Supreme Court, is not due process of law, "It is not process at all." Crossman v. City of

358

Galveston, 112 Tex. 303, 247 S.W. 810, 813, 26 A.L.R. 1210.

There is nothing new or novel about this case. It is an instance of new wine in an old bottle, and the principle is the same as it has been for a very long time.[1] Man's memory is so remarkably short, it is comforting to know that the lesson has frequently been preserved and recorded in the law of the land.

The judgment is affirmed.

## On Motion for Rehearing.

■ Appellants, by their motion for rehearing, cite several authorities to this Court for the proposition that special exceptions, though not urged upon the trial court, may be passed upon by the Court of Civil Appeals in a temporary injunction matter. Rule 90 expressly states that every defect, omission or fault in pleading, either of form or of substance, which is not specifically pointed out by motion or exception in writing and brought to the attention of the judge in the trial court before rendition of judgment in a non-jury case shall be deemed to have been waived by the party seeking reversal on such account. Rule 2 makes the rules of procedure applicable "in all actions of a civil nature, with such exceptions as may be hereinafter stated." Temporary injunctions are not among those so stated, and we know no reason why we should return to the rule of decision stated in cases decided long prior to the adoption of Rule 90. The Court of Civil Appeals is not the forum for original presentation of special exceptions. Head v. Commission-

ers' Court of Hutchinson County, Tex.Civ. App., 14 S.W.2d 86. Rule 90 simplifies the older practice and calls for a full opportunity by the trial court to avoid error, and we do not think the matter of the sufficiency of pleadings should be presented for the first time in the appellate court. Bednarz v. State, 142 Tex. 138, 176 S.W. 2d 562; Strickland Transp. Co. v. Atkins, Tex.Civ.App., 223 S.W.2d 675; Thompson v. Haney, Tex.Civ.App., 191 S.W.2d 491; Tew v Griffith, Tex.Civ.App., 187 S.W.2d 408; Litterst v. Edmons, Tex.Civ.App., 176 S.W.2d 343; Texas Osage Co-op. Royalty Pool v. Kemper, Tex.Civ.App., 170 S.W.2d 849.

■ Appellants further urge that they could properly try the cause upon the bill and answer without the necessity of bringing forward the statement of facts. This is a correct statement of the law, but when appellants elect to proceed in that manner, they carry all the additional burdens of presumption favoring the sound discretion of the trial court based on sufficient evidence. Beene v. Bryant, Tex.Civ.App., 201 S.W.2d 268; Horwitz v. Finkelstein, Tex.Civ.App., 189 S.W.2d 895. As stated in Cocke v. Naumann, Tex.Civ.App., 188 S.W.2d 781, 782: "The appeal is without a statement of facts; hence we must assume, except as against the record in this appeal and of prior litigations, of which we take notice, that the judgment of the court below is supported by pleadings and evidence, and that, in the exercise of the court's equitable powers, 'the ends of justice' justified the appointment of the re-

---

[1]. Daniel Webster, Argument in Dartmouth College Case, 4 Wheat. 518 (1819), "By the law of the land is most clearly intended the general law; *a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.* The meaning is, that *every citizen shall hold his* life, liberty, *property, and immunities under the protection of the general rules which govern society.* Everything which may pass under the form of an enactment, is not, therefore, to be considered the law of the land. *If this were so,* acts of attainder, bills of pains and penalties, *acts of confiscation,* acts reversing judgments, and acts directly transferring one man's estate to anoth-

er, legislative judgments, decrees, and forfeitures, in all possible forms, *would be the law of the land.*"

Magna Charta, June 15, 1215, in its celebrated 39th chapter is translated: *"No free man* shall be arrested or imprisoned, or *disseized,* or outlawed, or exiled, or in any manner destroyed, *nor will we proceed against him, or put burden upon him, except by the legal judgment of his peers, or by the law of the land."*

Constantin et al. v. Smith et al., Members of the Railroad Commission of Texas (3 judge district court, opinion by Hutcheson, Circuit Judge) 57 F.2d 227. See footnotes, p. 238.

ceiver and the injunction." That was a case of an appeal from an order granting a temporary injunction.

Objection is made to the court's statement that no notice was given appellees relating to the defects in the building, that no opportunity to correct building defects was afforded, and that when inquiry was made, the information was refused. We have examined again the limited record before us. We find that the sworn petition alleged that defendants "refuse to inform them in what manner the same is unsafe and therefore plaintiffs are unable to repair the same if in truth and in fact it is unsafe." The unchallenged statement of appellees' brief states that the sign placed on the place of business read: "The Nite Club has been closed by orders of Commissioner Roper due to the fact that the roof of the building was unsafe and therefore constituted a nuisance." It then states, also unchallenged: "Immediately thereafter, appellees contacted the appellants and inquired as to what was wrong or unsafe about the roof as the building was a new building, and the appellants refused to answer." The plaintiffs' sworn petition alleges that their patrons were intimidated and searched without warrants or information as to why they were searched. Appellees' brief states that there was no probable cause for such conduct, and the statement is unchallenged. In Sarris v. Christie, Tex.Civ.App., 217 S. W.2d 99, 101, cited in the former opinion, it was stated that: "* * * thus, in absence of a statement of facts on this appeal, the required statement in briefs, Rule 419, Vernon's Texas Rules of Civil Procedure, as to the facts upon which the judgment appealed from was based, are adopted in lieu of statement of facts."

Contrary to the point made by appellants in their motion for rehearing, our opinion in no way enjoins the Building Official from performing his duties nor the police officers from law enforcement. No part of the opinion is subject to that construction. The opinion in no way passed upon the validity of the Building Code. The opinion very clearly states, we think, that the provisions of the Code are to be followed.

The motion for rehearing is overruled.