No. 25392

The Colorado and Southern Railway Company, Inc. and the Atchison Topeka and Santa Fe Railway Company a/k/a Santa Fe Railway Company, a corporation v. The District Court in and for the Tenth Judicial District of the State of Colorado; Honorable S. Philip Cabibi, District Judge in and for the Tenth Judicial District, State of Colorado; the Colorado and Wyoming Railway Company, Inc.; CF&I Steel Corporation, a corporation; Marine Midland Bank-New York and Milton G. Janacek as Trustees under a certain indenture for the use and benefit of bond holders of CF&I Steel Corporation, a corporation

(493 P.2d 657)

Decided January 24, 1972. Rehearing denied February 28, 1972.

164

Grant, Shafroth, Toll & McHendrie, Willard L. Peck, Phelps, Fonda, Hays, Farley, Abram & Shaw, Predovich and Ward, for petitioners.

Welborn, Cook, Phipps & Brown, Robert F. Welborn, David W. Furgason, Miles C. Cortez, Jr., Kettelkamp & Vento, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an original proceeding by which petitioners, Colorado & Southern Railway and Santa Fe Railway, seek a writ prohibiting the district court from proceeding in an action in eminent domain filed by The Colorado and Wyoming Railway Company, Inc., herein called C&W Company, to condemn an easement to cross over the tracks of petitioners.

The complaint states that the C&W Company has selected a "suitable place" for the crossing and sets forth the detailed legal description of the property sought to be condemned. Relief requested is immediate possession and use of such cross-over and that the district court determine the amount to be deposited pending later determination of the compensation to be assessed. Petitioners filed a motion to dismiss the petition, alleging that the district court lacked jurisdiction over the subject matter of the action asserting that as a condition precedent to any petition being brought in eminent domain, the C&W Company first had to secure an order pursuant to 1969 Perm. Supp., C.R.S. 1963, 115-4-6(2)(a). The section reads in part:

"The [public utilities] commission shall have power to determine, order, and prescribe, in accordance with the plans and specifications to be approved by it, the just and reasonable manner including the particular point of crossing* * * at which the tracks or other facilities of any railroad corporation may be constructed across the tracks or other facilities of any other railroad corporation* * * at grade, or above or below grade;* * * and to determine, order, and prescribe the terms and conditions of installation and operation, maintenance, and protection of all such crossings which may now or hereafter be constructed* * * to the end, intent, and purpose that accidents may be prevented and the safety of the public promoted."

The district court denied the motion finding that it did have jurisdiction, and that a cause of action was stated by the C&W Company under 1965 Perm. Supp., C.R.S. 1963, 50-1-2, which reads in part:

"In all cases where* * * the right to construct or maintain any railroad, spur, or side track* * * has been or shall be conferred by general laws or special charter, upon any* * * corporation, and the compensation to be paid for in respect of property sought to be appropriated or damaged* * * cannot be agreed upon by the parties interested* * * it shall be lawful for the party authorized to take or damage the property *so required,* to apply to the judge of the district court* * * where the property* * * is situate, by filing* * * a petition, setting forth, by reference* * * a description of the property* * * and praying such judge to cause the compensation to be paid to the owner to be assessed* * * *" (Emphasis added.)

Rule to show cause was issued, has been answered, and the matter is now at issue.

The question presented herein is whether the district court has jurisdiction over the subject matter — the land to be acquired. We hold that it does not.

▮ Courts must so act as to give full force and effect when possible to the statutory law of the state. Where two statutes exist — one dealing with the right of the public

utility to condemn the land of another utility, and another statute detailing the powers and duties of the Public Utilities Commission in regulating such acquisitions — the statutes must be read in *pari materia. See People v. Gibson,* 53 Colo. 231, 125 P. 531 (1912).

■ Section 50-1-2, *supra,* provides in effect that a railroad may go to court to acquire property "required" by it. However, the Public Utilities Commission under section 115-4-6(2)(a), has the power to determine what property the condemning railroad can use as the "particular point of crossing." It follows logically then that the commission — not the railroad — determines what property the railroad requires.

■ Another facet compelling our conclusion that the commission must act prior to court action is demonstrated by the rule requiring the complaint in eminent domain to describe the property to be condemned. No decree granting immediate possession could be entered without a designation and determination of the property involved. Likewise, the amount of the deposit could not be determined absent some showing of the property value likely to be finally assessed as just compensation for the taking. Any other construction of these two statutes would present the classic "cart before the horse" situation. If the railroad acquires immediate possession of the property by eminent domain and the commission later determines the "particular point of crossing" to be at another location pursuant to section 115-4-6(2)(a), *supra,* the railroad would have acquired land or an easement that it cannot use, and the one against whom the decree was entered would have had taken from it property actually not subject to condemnation. Resultantly, unnecessary duplicate litigation would then follow as the utility seeks by another eminent domain decree the property determined by the commission to be "the point of crossing." We will not construe statutes which are in *pari materia* to lead to absurdities. *Compare People v. Gibson, supra, with Commrs' v. Union Pac. R.R. Co.,* 89 Colo. 110, 299 P. 1055 (1931).

The C&W Company has cited *Miller v. Public Serv. Co.,*

129 Colo. 513, 272 P.2d 283 (1954), as supporting its election to proceed directly in court. In that case it was clear from the face of the statute that commission action was to follow condemnation because, as the court commented, the certificate of convenience and necessity depended on the acquisition of the land involved, otherwise the service to be rendered under the certificate could not be furnished. In the instant case the "particular point of crossing" is absolutely essential to framing a material allegation — the legal description of the property sought to be acquired — in the action.

 The C&W Company also argues that prohibition will not lie in this case since petitioners have not shown irreparable injury. The writ was sought pursuant to C.A.R. 21 and is the common law writ pursuant to Article VI, Section 3 of the Colorado constitution. The showing required to invoke our intervention is that the court is proceeding without or in excess of jurisdiction. In this case the court could not acquire jurisdiction over the particular property described.

The rule is made absolute.