MR. JUSTICE GROVES
delivered the opinion of the Court.
On August 21, 1975 the State Engineer promulgated proposed rules and regulations “Governing the Use, Control, and Protection of Water Rights for Both Surface and Underground Water Located in the Rio Grande and Conejos River Basins and their Tributaries.” These were proposed under section 37-92-501, C.R.S. 1973 of the Water Right Determination and Administration Act of 1969, hereinafter called the Act. After publication of the proposed rules, many protests were filed in Water Division 3 of the District Court. The water court on pretrial ruled that such rules could be adopted only in separate proceedings under the cited statute and under section 37-80-104, C.R.S. 1973. It therefore disapproved the tendered rules and regulations and ordered that the matter be remanded to the State Engineer for the purpose of acting in two separate proceedings under such statutes. We reverse.
The Rio Grande River Compact prompted the proposed rules and regulations of the State Engineer, which are hereinafter referred to as the Rules. The Compact (which was approved in 1939, section 37-66-101, C.R.S. 1973), is an agreement among the states of Colorado, New Mexico and Texas. The Rio Grande River flows from Colorado into New Mexico. Under the Compact, Colorado became obligated to deliver certain quantities of water annually at the Colorado-New Mexico state line. In 1968 Texas and New Mexico instituted an original action in the United States Supreme Court, alleging that Colorado had delivered nearly a million acre-feet less than provided by the Compact and praying that Colorado be forced to comply with the Compact and repay the alleged “debit” of water. Later that same year, a continuance of the litigation was granted upon the stipulation of the three states that Texas and New Mexico would not prosecute their claims for repayment of the debit so long as Colorado undertook to meet the delivery obligation established by the schedules of the Compact on an annual basis. The stipulation provided:
“To this end the State of Colorado shall exercise its best efforts and use all available administrative and legal powers including, if necessary, the curtailment of diversions enforced by agents of the state.”
*200 The State Engineer regards delivery of water under the Compact as “the most senior water commitment of the water basins involved.” Since 1968 the State Engineer has attempted to effect this delivery by curtailing diversions solely of Colorado surface appropriators. By 1975 he perceived that this curtailment was causing considerable strife as little, if any, of the State line Compact delivery had been furnished by appropriated tributary groundwater, although, generally, the priorities for groundwater use are junior to the surface rights being taken for compliance with the Compact. Accordingly, the State Engineer in 1975 promulgated and submitted for approval of the water court proposed rules and regulations which he believed would establish an integrated, comprehensive regulatory system.
The basins and tributaries of the Rio Grande and Conejos Rivers here involved are in the San Luis Valley of Colorado. The valley contains 16 communities, whose public water systems are to a substantial extent supplied by wells, and approximately 500,000 acres of highly productive agricultural land, which are nearly totally dependent upon irrigation water. In addition to the surface water adjudications, there has been a very extensive development of irrigation from wells.[1]
The wells derive their water from at least three segregable sources: (1) a deep artesian aquifer known as the “confined aquifer;” (2) a shallow, “unconfined” ground water aquifer, which is in direct hydraulic connection with surface stréams; and (3) a shallow, “unconfined” ground water aquifer, which is within a “closed basin.” Further, there are natural streams which discharge (underground) into a closed basin rather than directly into the Rio Grande River. There is a large network of drainage ditches, originally constructed to drain lands, but now generally utilized for the additional purposes of providing water for irrigation.
The competition for water is intense. Even excluding the problems created by the Compact, this valley is burdened with an unbelievably complex series of water problems.
The proposed rules embraced, among other things, the following areas:
“Methods of establishing the respective contributions to be made by the Rio Grande River System and the Conejos River System under the delivery requirements set forth in the Compact.
“Extent of restriction upon diversion of the surface waters of the two river systems during the months of January, February, March, November and December of each year.
“Credits allocable to the two river systems under the Compact.
*201 “Effect upon water which is non-tributary to either river system.
“Regulation of water stored and released from pre-compact reservoirs.
“Times and quantities of underground water from an aquifer hydraulically connected to service streams which may be placed to a beneficial use.
“Curtailment of such times and quantities to certain days during calendar year 1976 through 1980 and during calendar year 1980 and thereafter.
“Exceptions to curtailment of underground diversion by reason of plans of augmentation.”
The Water Right Determination and Administration Act of 1969[2] was approved on June 7, 1969. It provides:
“[I]t is the policy of this state to integrate the appropriation, use, and administration of underground water tributary to a stream with the use of surface water in such a way as to maximize the beneficial use of all of the waters of this state.”
The Act then contains a comprehensive set of provisions for the determination and administration of water rights in this state. It provides that the “state engineer and division engineer shall administer, distribute, and regulate the waters of the state” in accordance with constitutional and statutory provisions, and may adopt rules and regulations. Section 37-92-501(1), C.R.S. 1973. In this opinion the authority under the Act is called the “water rule power.”
On the same day — June 7, 1969 — the present section 37-80-104, C.R.S. 1973 was approved:
“The state engineer shall make and enforce such regulations with respect to deliveries of water as will enable the state of Colorado to meet its compact commitments. In those cases where the compact is deficient in establishing standards for administration within Colorado to provide for meeting its terms, the state engineer shall make such regulations as will be legal and equitable to regulate distribution among the appropriators within Colorado obligated to curtail diversions to meet compact commitments, so as to restore lawful use conditions as they were before the effective date of the compact insofar as possible.”
This last mentioned rule-making power is referred to in this opinion as the “compact rule power.”
In its order, the water court ruled in effect as follows:
If the General Assembly intended for the State Engineer to exercise his “compact rule power,” it would have included it in the Water Right Determination and Administration Act of 1969. Except for specific exclusions, rulemaking by a state agency must be in accordance with the State Administrative Procedure Act. Section 24-4-101 et seq., C.R.S. 1973. The State Engineer has not followed the procedure set forth in the State *202 Administrative Procedure Act. So far as exercise of the “compact rule power” is concerned,, the State Engineer must follow the State Administrative Procedure Act. “[E]ach set of rules for the purposes and within the requirements and limitations should be set up separately.”
It is crystal clear that, in order to promulgate and enforce rules for compliance with Compact commitments, the State Engineer must promulgate and enforce appropriate rules for the administration of water rights. The latter rules must of necessity be under the authority of the “water rule power.” Any achievement under the “compact rule power” will be dependent upon and inextricably commingled with rules under the “water rule power.” Promulgation, adoption and approval or disapproval of the proposed rules under both sets of procedures would be analogous to driving a wagon with teams hitched to each end pulling in opposite directions.
The General Assembly adopted the Water Right Determination and Administration Act of 1969 following intensive and extensive debate and study. It is inconceivable that it would at that time, with its perspective of the subjects involved, remove the “compact rule power” from the last mentioned Act and place it under the State Administrative Procedure Act. It was obviously the legislative intent that rule making be accomplished under the “compact rule power” in a proceeding conducted in accordance with the Water Right Determination and Administration Act of 1969; and we so hold. For cases involving statutes which relate to the same subject matter see People in Interest of M.K.A., 182 Colo. 172, 511 P.2d 477 (1973); Colorado and S. Ry. v. District Court, 177 Colo. 162, 493 P.2d 657 (1972); Dines v. Harris, 88 Colo. 22, 291 P. 1024 (1930); People v. Gibson, 53 Colo. 231, 125 P. 531 (1912); Whisler v. Kuckler, 36 Colo. App. 200, 538 P.2d 477 (1975).
The water court made some comments and conclusions which we regard as extraneous to the narrow issue we have addressed. We do not reach these other comments and conclusions, although undoubtedly some of them will be the subject of objection and later proceedings before the water court.
The pre-trial order of the trial court is reversed and the cause remanded with directions to proceed in a manner not inconsistent with the views expressed herein.

 In its order the water court mentioned that in this division 9216 wells had been adjudicated and applications for adjudication of 2780 additional wells remained undecided.

 Section 37-92-101 et seq., C.R.S. 1973.