Honorable Richard D. Lamm Governor, State of Colorado Executive Chambers State Capitol Denver, Colorado 80203
Dear Governor Lamm:
This is in response to your September 3, 1980 letter requesting an opinion on the authority of the Governor to approve the transfer of funds appropriated for fiscal year 1979-1980 to authorized Department of Corrections construction projects. You further ask that the legal questions raised by Senator Fred Anderson in his letter to you of August 29, 1980, be considered.
QUESTION PRESENTED AND CONCLUSION
The question which you have asked may be set forth as follows:
Does the Governor have the authority to approve the transfer of funds appropriated for fiscal year 1979-1980 for the payment of "operational expenses" of various executive branch departments to Department of Corrections' capital construction projects which have been specifically authorized and funded for that same fiscal year?
 My conclusion is the Governor does have such authority pursuant to C.R.S. 1973, 24-30-201(1)(b) and 24-37-405(1)(k) (1979 Supp.).
ANALYSIS
The facts which give rise to your opinion request follow. On August 28, 1980, you authorized the transfer of $2.475 million to the Department of Corrections. A substantial amount of this transfer was to authorized capital construction projects, and the remainder was to the Correctional Industries general fund subsidy line item.
Under article V, section 33, Colorado Constitution (1979 Supp.), as amended in 1974, no money in the state treasury can be disbursed unless there is an appropriation or unless it is otherwise authorized by law.
In 1941, the general assembly enacted a major reorganization of the executive branch through the "Administrative Code of 1941." (Chapter 2, 1941 Session Laws.) In this act, the Division of Budgets was given the authority and duty to "recommend transfers between appropriations under the provisions of law, to become effective upon approval by the Governor" (page 53, 1941 Session Laws). This language is identical to that in the present C.R.S. 1973, 24-30-201(1)(b), which now vests that duty in the state controller. C.R.S. 1973, 24-37-405(1)(k) (1979 Supp.) provides that the Division of Budgeting in the Office of State Planning and Budgeting review all transfers between appropriations for the Governor.
It has been my consistent interpretation of C.R.S. 1973,24-30-201(1)(b) that it authorizes the executive to transfer between line item appropriations, including between departments. In Senator Anderson's letter of August 29, 1980 and in Senator Anderson's and Speaker Burford's letter of September 3, 1980, there is an indication of basic approval of this interpretation of the transfer statute, with the added caveat that money appropriated for "operational expenses" may not be transferred for use in capital construction projects.
Therefore, the only issue is whether C.R.S. 1973, 24-30-201(1)(b) authorizes executive transfers from appropriations for operational expenditures to appropriations for authorized capital construction projects. Without referencing the transfer statute, Senator Anderson suggested that such transfers would contravene C.R.S. 1973, 24-75-302 and 303. Presumably the basis for Senator Anderson's statement is that these statutes, dealing with capital construction, indicate that the general assembly determines (1) the amount to be allocated to the capital construction fund, and (2) the amount and the form of appropriations for capital construction projects. It is significant to note that there is no requirement that appropriations for capital construction projects come only from the capital construction fund. C.R.S. 1973, 24-75-303 clearly states that the general assembly may determine appropriations for capital construction "from such funds as it deems necessary." Under this statute, the capital construction fund is not the exclusive source of money for capital construction projects.
The constitutional authority of the general assembly to appropriate state funds is not in question here. The general assembly determines the amount, form, and funding source for all appropriations. C.R.S. 1973, 24-75-302 and 303 do not add to the authority of the general assembly but rather only serve to reiterate and reaffirm that authority for capital construction projects. Indeed C.R.S. 1973, 24-75-302 appears to have the particular purpose of preserving funds for capital construction by assuring that capital construction fund appropriations do not revert to the general fund.
Nor do C.R.S. 1973, 24-75-302 and 303 act to amend or restrict C.R.S. 1973, 24-30-201(1)(b). Both the transfer statute and the capital construction statutes can be interpreted so as to give full meaning to each of them. The capital construction statutes operate, as do all other appropriation-related statutes, to reiterate the constitutional authority of the general assembly to appropriate state funds. See, e.g., MacManus v.Love, 179 Colo. 218, 499 P.2d 609 (1972). In the instant situation the transfer statute operates as it always does to vest the executive with the authority to transfer between appropriations once those appropriations have been made by the general assembly.
In addition, there is no legislative intent evidenced in C.R.S. 1973, 24-75-302 and 303 to restrict or limit such transfer of funds into capital construction projects which are already authorized and funded. This stands in stark contrast to the severe and direct limitations on the transfer of fundsout of the capital construction fund, set forth in C.R.S. 1973, 24-75-305.
The rules of statutory construction support this analysis. The transfer authority was first enacted in 1941 and the capital construction statutes in 1959. If statutes enacted in different sessions are irreconcilable, the statute which is latest in time prevails. C.R.S. 1973, 2-4-206. However, if the two statutes can be construed, as herein, so that an inconsistency can be avoided, there is a duty to read them in pari materia
so as to avoid any such conflict. See, e.g.,Kollenberger v. The People, 9 Colo. 233, 235 (1886);People v. Gibson, 53 Colo. 231, 235, 125 P. 531
(1912); Colorado Southern Railway Company, Inc. v.District Court, 177 Colo. 162, 166, 493 P.2d 657 (1972);People v. James, 178 Colo. 401, 404, 497 P.2d 1256
(1972).
Here, there is no irreconcilable conflict between the statutes. Because C.R.S. 1973, 24-75-302 and 303 can be read in parimateria with C.R.S. 1973, 24-30-201(1)(b), as discussed above, there is a clear obligation to do so.
You should be advised that there were several prior attorney general opinions which are indirectly related to certain issues pertinent here. (See, e.g., 68-4239; August 12, 1968; 69-4374, October 24, 1969; 70-4536, December 8, 1970.) However, none of these opinions addresses the specific issue of transferring funds from operational expenses to authorized capital construction projects. These opinions are not definitive, and contain sometimes contradictory language which cannot be reconciled. Hence I base this on my analysis of the relevant constitutional and statutory provisions.
Based upon my analysis, it is my opinion that the Governor has statutory authority to approve the transfer of funds from operating appropriations to authorized capital construction appropriations.
SUMMARY
The Governor has statutory authority, under C.R.S. 1973,24-30-201(1)(b) to approve the transfer of funds from operating expenditure appropriations to authorized capital construction appropriations.
Very truly yours,
 J.D. MacFARLANE Attorney General
GOVERNOR PUBLIC FUNDS APPROPRIATION CORRECTIONS
C.R.S. 1973, 24-30-201(1)(b) C.R.S. 1973, 24-37-405(1)(k) C.R.S. 1973, 24-75-302
C.R.S. 1973, 24-75-303
Colo. Const. art. V, § 33
EXECUTIVE BRANCH Governor, Office of
Governor has statutory authority to approve transfer of funds from operating expenditure appropriations to authorized capital construction appropriations.