Elbert, J.
On the trial below, Juan B. Cordoba, Manual Abeyta and Casimero Romero were summoned with others as jurors. Upon his voir dire each answered that he did not understand the English language. The plaintiff in error made this *98 ground of a challenge for cause; the challenge was overruled by the court, and the persons named were impanelled and sworn and served as jurors upon the trial.
Other errors were assigned, but by stipulation of counsel the cause is submitted upon this assignment alone.
Is inability on the part of persons called as jurors, to speak the English language and to understand it when spoken, necessarily a disqualifying fact? The question is not without difficulty.
The statute declares that “all male inhabitants of the state, of the age of twenty-one years, who are citizens of the United States, or have declared their intention to become such citizens, and who have not been convicted of felony, shall be competent to serve as grand and petit jurors in all courts and judicial proceedings in the state.”
These are the general statutory qualifications of a juror. One possessing them, however, is still subject to challenge. Section 161 of the Code provides, that either party may challenge peremptorily or for cause, limiting peremptory challenges to four. Section 162 enumerate seven several grounds upon which challenges for cause may be taken. It is unnecessary to advert to them further than to say, that inability to speak or understand the English language is not enumerated as a ground of challenge.
This is not a case,, however, where enumeration is to be taken as excluding disqualifying, causes not enumerated; otherwise, deafness, insanity, and like physical and mental disqualifications, absolute in their character would be unchallengable. The maxim expresffo unins est exclusio alterias is not of universal application in the construction of statutes. The legislative intention is to be taken according to the necessity of the matter, and according to that which is consonant to reason and sound discretion. Brown’s Leg. Max., 664*.
In the silence of the statute, therefore, the grounds of challenge in this cause stand as at common law, to be determined by a consideration of the duties imposed upon a juror, and the qualifications thereunto requisite.
Challenges to the poll, are reduced by Sir Edward Cooke, under four different heads: propter honoris respectum, propter defectum, propter affectum, and propter delictum. 3 Black. Com., 361*, 362*.
If to either, the challenge in the present case must be referred to the second head; it is a defect of education, but only in a rela *99 tive and limited sense. Knowledge of a language other than a person’s vernacular, is but an accomplishment; want of it argues nothing respecting mental culture, in fact may co-exist with the highest intellectual attainments, and the greatest aptitude for the duties of a juror. While this is the case, the inability of a juror, ignorant of the language in which the proceedings of the court are had, to discharge the duties of a juror unaided, is patent.
It is his duty to listen to the evidence, the arguments of counsel, and the instructions of the court. Ignorance of the language as a matter of fact, is as conspicuously a disqualifying circumstance as though he was deaf, unless the court may aid him in the discharge of his duties through the instrumentality of an interpreter; hence, the question comes to this: May the court in such a case interpose an interpreter? If it has the power, the disqualification is removable; if not, it is complete and absolute.
It is true, there is no express authority of statute so to do, but there is a general power conferred by Sec. 402 of the Code upon district courts to make rules and regulations governing their practice and procedure, in reference to all matters not expressly provided for by law. Independently of statute, courts of original jurisdiction have inherent power to make and enforce rules for the transaction of their business, subject only to the condition that they do not contravene the laws of the Gammon et al. v. Fritz, 79 Pa., 303.
It must be borne in mind that the territory embraced in quite a number of the counties in the southern part of the state, and among them the county in which this litigation originated, formerly belonged to the Republic of Mexico; that it was acquired by treaty by the United States, and that the inhabitants thereof were largely, if not exclusively, a Spanish-speaking people. Of this fact we take judicial notice. These people are in all respects citizens, and the association of alienage and its disabilities with ignorance of our language is to be dismissed. Under like circumstances it was provided by statute, in the state of California, that a juror should have sufficient knowledge of the language in which the proceedings of the courts were had; but certain counties, where a large portion of the population were ignorant of the English language, were excepted by the statute from the operation of this rule. It is a noticeable fact, that, both under our territorial and state governments, legislation touching the ad *100 ministration of the law has proceeded without any express reference to, or recognition of the fact, that, in the counties mentioned, its administration would chiefly concern, as for its agencies it would be largely dependent upon a Mexican citizenship. In the early history of the territory it would have been perhaps impossible, in these counties, to obtain an English-speaking j ury. Even now, the exclusive rule that is contended for, if it did not defeat the administration of the law in these counties, would devolve the burthens of jury duty upon a very limited number.
We cannot conceive that legislators have been blind to these facts, or negligent of their demands. In the absence of express legislation, we presume them to have regarded the difficulty as amply provided for, either in the provisions of Sec. 402, cited supra, or in the inherent powers of the courts of original jurisdiction which they had established for the administration of the law. For these reasons we think it was fully within the power of the court to appoint an interpreter, under the sanction of an oath, to interpret the testimony of witnesses and the arguments of counsel. This would affect the discharge of their duties as jurors while in the jury box. Further than this we do not decide.
It does not appear that an interpreter was appointed; but it is to be presumed that the court did whatever was necessary in this behalf.
As to the discharge of their duties in the jury room—the duties of consultation, decision and agreement—it does not appear but what the other jurors of the panel were Mexicans, and spoke the Spanish as well as the English language; if so, no interpreter was necessary after their retirement from the jury box.
We are told that we must presume that they were English-speaking only. Respecting the jurors in a county where the English-speaking class is so limited, and the Spanish-speaking class is so largely in excess, such a presumption would be without foundation in fact, and inadmissible. Without this presumption it does not affirmatively appear that the jurors named were disqualified for the duties of the jury room. We desire to say, however, that the power of the court to interpose an interpreter in the jury room is embarrassed by considerations not attaching to the appointment of an interpreter to act in the presence of the *101 court, and if it exist, its exercise should be limited to cases of strictest necessity.
Much stress is laid upon the proposition that all judicial proceedings must be in the English language, and the case of Dunton v. Montoya, 1 Col., 99, is cited as authority. In that case the narr was in the Spanish language, and the doctrine of the case must be limited to the declaration that all pleadings must be in English. The fallacy of the argument on this proposition, consists in treating a general rule as though it were an exclusive rule. The declaration of the Code (Sec. 405) is that “every written proceeding in a court of justice in this state, or before a judicial officer, shall be in the English language.” * This is substantially the statute of IV Geo., 2, 626, which enacts “That both the pleadings and the record should thenceforward be framed in English.” Stephen’s Pleading, appendix 24. Prior to that time the record and pleadings (after the introduction of written pleadings) had been framed in Latin, and the statute had for its object the abolition of that practice.
By statute 36, Edward III, it was enacted that “For the future all pleas should be pleaded, shown, defended, answered, debated and judged in the English tongue, but be entered and enrolled in Latin.” 3 Black. Com., 318. The arms of Edward had prevailed over those of France, and the object of the statute was to banish from the English courts of justice the use of the Norman or law-French introduced after the Conquest. This appears to be the only statute on the subject prior to the fourth year of James I.
How far and with what modifications it may be said to prevail as part of our common law, need not be discussed. Undoubtedly laws are to be administered in the language of the people adopting them. The people of this state, as of the United States, are an English-speaking people, and, in the silence of the statute all judicial proceedings would be, as of course, in that language. It does not follow, however, that they would be exclusively so. This proposition must be taken subject to the practical necessities that daily arise in the administration of the law in courts of justice.
Contracts in a foreign tongue are to be dealt with, and must be translated. Non-English-speaking witnesses are put upon the stand and must “bear witness” through an interpreter. Non-English-speaking prisoners are put upon their trial, and the in *102 dictment and other proceedings of the trial are made known and manifest to them by the same instrumentality. The proposition, therefore, that all judicial proceedings must be in the English language, must be taken sub modo.
In this view, the difficulty made respecting the instructions of the court also disappears. While under the Code they must be in writing, and under Sec. 405, in English, we do not conceive that their translation into Spanish for the use and instruction of a juror understandin'g that language alone, would be inhibited by the spirit of the section. The object of the provision is to secure a record in English, and this would in no wise be defeated.
The hypothetical case put by counsel, of a jury composed of persons of several different nationalities, is met by the suggestion that extremes prove nothing. Such complications are not likely to arise where ample judicial discretion exists.
We are not unmindful that there are many serious objections to the interposition of interpreters in judicial proceedings, and while we hold it within the power of the court to appoint an interpreter under the circumstances of this case, it was also within its discretion to exclude the jurors named for the cause assigned. People v. Arceo, 32 Cal., 40; Atlas M. Co. v. Johnson, 23 Mich., 37; State v. Marshall, 8 Ala., (N. S.) 302.
Such persons are not disqualified, but whenever it is practicable to secure a full panel of English-speaking jurors, a wise discretion would excuse from jury duty persons ignorant of that language.
The cases of Fisher v. Philadelphia, 4 Brewster, 375; Lyles v. The State, 41 Texas, 172, are cited against the conclusion arrived at in this opinion. The first authority we have been unable to obtain. With the reasoning of the last we are not satisfied. If our conclusion as to the power of the court to appoint an interpreter be correct, the foundations upon which the conclusions in that case appear to rest, disappears.
The judgment of the court below is affirmed, with costs.