The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Lawrence Joseph CAREY, Jr.,
Defendant–Appellant.

No. 05CA1378.

Colorado Court of Appeals,
Div. VI.

April 17, 2008.

Rehearing Denied June 12, 2008.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Lawrence Joseph Carey, Jr., appeals the judgment of conviction entered on a jury verdict finding him guilty of harassment by stalking, violation of a protection order, and violation of a bail bond condition. We affirm.

Defendant and the victim, B.B., met in 2001 and thereafter had both a personal and a business relationship. Before this case was filed, defendant's relationship with B.B. had

led to criminal charges in other cases, the circumstances of which are relevant to the issues raised on appeal here.

In July 2002, following an altercation with B.B., defendant was arrested and pled guilty in case number 02M1818 to misdemeanor harassment, for which he received a two-year deferred judgment and sentence. Thereafter, defendant and B.B. quit living together, but they worked together to run a restaurant. In the spring of 2003, defendant began telephoning B.B. frequently. After defendant repeatedly called and threatened B.B. on July 26, 2003, he was arrested on July 27 and charged, in case number 03M1776, with domestic violence and harassment.

The original charges in this case—intimidation of a witness or victim, violation of a protection order, and violation of bail bond conditions—were based on defendant's calls to B.B. after he was released on bond following his July 27 arrest. The prosecution later added a harassment by stalking count based on events occurring between April 1 and August 5, 2003.

The jury found defendant not guilty of intimidating a witness but guilty of the three remaining charges. The trial court denied defendant's motion for new trial, in which he argued, as he had during trial, that his harassment by stalking conviction violated double jeopardy principles and the mandatory joinder rule.

### I. Double Jeopardy, Mandatory Joinder, and Due Process

As noted, defendant was charged in case number 03M1776 with harassment and domestic violence based on telephone calls he made to B.B. on July 26, 2003. That case was resolved by defendant's entry of a guilty plea, on February 17, 2004, to violation of a mandatory restraining order in exchange for dismissal of the original charges. Defendant now argues on appeal, as he did in the trial court, that his conviction for harassment by stalking in this case, based in part on his conduct on July 26, 2003, violated his right to be protected against double jeopardy and his statutory right to mandatory joinder. He further asserts for the first time on appeal

that the conviction violated his right to due process. We disagree.

### A. Double Jeopardy

■ We do not agree with defendant that his conviction for harassment by stalking violates constitutional double jeopardy protections.

The Double Jeopardy Clauses of both the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same offense. U.S. Const. amend. V; Colo. Const. art. II, § 18.

■ To determine whether two or more offenses are the "same offense," we apply the "same elements" test set forth by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under that test, if the same conduct violates distinct statutory provisions, we are to compare the statutory elements of the offenses in question. Double jeopardy "does not bar a subsequent prosecution where at least one of the elements of the offense in the second prosecution is different from the elements of the offense in the first prosecution." *People v. Allen*, 868 P.2d 379, 381 (Colo. 1994); *see People v. Tallwhiteman*, 124 P.3d 827, 835 (Colo.App.2005); *see also* § 18–1–408(1), C.R.S.2007.

■ Double jeopardy principles also preclude the imposition of "multiple punishments for a greater and lesser included offense." *People v. Leske*, 957 P.2d 1030, 1035 (Colo.1998) (quoting *Armintrout v. People*, 864 P.2d 576, 578–79 (Colo.1993)); *see* § 18–1–408(1), (5)(a), C.R.S.2007. An offense is included in another if proof of the facts establishing the statutory elements of the greater offense necessarily establishes all the elements of the lesser offense. *Leske*, 957 P.2d at 1036.

Comparing the elements of the harassment by stalking offense in this case with the offense to which defendant pled guilty in case number 03M1776, we find no double jeopardy violation.

A person commits harassment by stalking if, as relevant here, he knowingly "[m]akes a credible threat to another person and, in connection with such threat, repeatedly

makes any form of communication with that person ... regardless of whether a conversation ensues" or if he "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." § 18–9–111(4)(b)(II), (III), C.R.S. 2007. Defendant was charged in this case with harassment by stalking under both subsection (II) and subsection (III) of section 18–9–111(4)(b), and the jury found him guilty of both.

The offense to which defendant pled guilty in case number 03M1776, violation of a restraining order, is committed if a person with knowledge of a protection order "[c]ontacts, harasses, injures, intimidates, molests, threatens, or touches the protected person." § 18–6–803.5(1)(a), C.R.S.2007. This offense contains an element—knowledge of a protection order—that is not an element of either form of harassment by stalking charged in this case. Conversely, both types of harassment by stalking include elements—making a credible threat, in section 18–9–111(4)(b)(II), and serious emotional distress, in section 18–9–111(4)(b)(III)—that are not required to establish violation of a protection order. Thus, the offenses are not the same under the same elements test, and double jeopardy protections are not implicated.

We are not persuaded otherwise by defendant's contention that, because the restraining order which he violated provided that a violation would occur if he "harassed" B.B., the harassment of B.B. on July 26, 2003, to which he effectively pled guilty was encompassed within the harassment offense of which he was convicted in this case.

Even if defendant's guilty plea in case number 03M1776 were somehow deemed a plea of guilty to harassment, the harassment offense charged in that case was not the same offense as, or a lesser included offense of, the harassment by stalking of which defendant was convicted here. Defendant was charged in 03M1776 with violating section 18–9–111(1)(e), C.R.S.2007, which provides

that a person commits misdemeanor harassment

if, with intent to harass, annoy, or alarm another person, he or she ... [i]nitiates communication with a person, anonymously or otherwise by telephone, computer, computer network, or computer system in a manner intended to harass or threaten bodily injury or property damage, or makes any comment, request, suggestion, or proposal by telephone, computer, computer network, or computer system that is obscene.

That offense specifically requires communication by telephone or computer, which is not required to establish harassment by stalking; and the two forms of harassment by stalking charged in this case include elements—a "credible threat" and repeated communication in connection with such threat, on the one hand, and serious emotional distress, on the other—that are not elements of the offense set forth in section 18–9–111(1)(e).

Thus, convicting defendant of harassment by stalking in this case did not violate double jeopardy protections.

### B. Mandatory Joinder

■ Defendant further contends that the harassment by stalking charge arose from the same criminal episode as the misdemeanor harassment charge in 03M1776, and that prosecuting him on the former charge in this case violated his right, under section 18–1–408(2), C.R.S.2007, to have the offenses prosecuted in a single prosecution. We conclude that defendant has waived this contention.

Section 18–1–408(2) states:

If the several offenses are actually known to the district attorney at the time of commencing the prosecution and were committed within the district attorney's judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any offense not thus joined by separate count cannot thereafter be the basis of a subsequent prosecution; except that, if at the time jeopardy attaches with respect to the first prosecution

against the defendant the defendant or counsel for the defendant actually knows of additional pending prosecutions that this subsection (2) requires the district attorney to charge and the defendant or counsel for the defendant fails to object to the prosecution's failure to join the charges, the defendant waives any claim pursuant to this subsection (2) that a subsequent prosecution is prohibited.

In its order denying defendant's new trial motion, the trial court noted that the test for establishing a right to mandatory joinder under the statute, *see Jeffrey v. District Court*, 626 P.2d 631, 637 (Colo.1981), had been met, and that the prosecution conceded that it had. However, the court concluded, defendant had waived his right to compulsory joinder by failing to raise this issue either at the time jeopardy attached in 03M1776 or before jeopardy attached in the present case. Although our analysis of the issue differs somewhat from that of the trial court, we agree that defendant waived the mandatory joinder issue.

1.

Under the current version of section 18–1–408(2), a defendant waives any claim that the statute has been violated

if *at the time jeopardy attaches with respect to the first prosecution* against the defendant the defendant or counsel for the defendant actually knows of additional pending prosecutions that this subsection (2) requires the district attorney to charge and the defendant or counsel for the defendant fails to object to the prosecution's failure to join the charges.

(Emphasis added.)

Defendant contends, and we agree, that the record does not support the trial court's finding that the defense "was aware of the pending prosecution" for harassment by stalking in this case when jeopardy attached in 03M1776 on February 17, 2004, the date defendant pled guilty in that case. *See Jeffrey*, 626 P.2d at 636 (jeopardy attaches when court accepts the defendant's guilty plea).

In opposing defendant's new trial motion, the prosecutor argued that defendant and his

counsel were actually aware, when he pled guilty in 03M1776 on February 17, 2004, "that another prosecution for the same course of conduct was pending," because the defense had been informed at a January 2004 hearing in this case that the People intended to add a stalking charge to the original three charges. The trial court so found.

However, there is nothing in the record to establish that, on February 17, defendant or his counsel (a different attorney from the one who was representing him in this case) knew that the stalking charge the prosecutor proposed to add in this case was based on "the same act or series of acts arising from the same criminal episode" as that on which the charges in 03M1776 were based. The transcript of the January 2004 hearing, at which the parties agreed to continue the preliminary hearing based on new information the prosecutor had received, includes no statement by the prosecutor about adding a harassment charge. More important, although defense counsel had apparently received a copy of the motion to add the new charge by the time of the February 18, 2004, preliminary hearing in this case, the copy he received did not show that the charge would apply to the events of July 26, 2003. Rather, the prosecutor stated at the February 18 hearing that he had just "noted that there was actually just a small error, in that [the] date of offense alleged is July thirty-first through August fifth, and in fact it's supposed to be July twenty-sixth through August fifth, so in the interest of completeness I'd ask that the court accept that motion as modified."

Thus, even assuming the defense had actual knowledge on February 17, 2004, that the prosecution was intending to add a harassment by stalking charge in this case, the defense would not have known until the following day that the charge would encompass the events of July 26, 2003. In these circumstances, we agree with defendant that the defense cannot be deemed to have actually known, when defendant entered his guilty plea in 03M1776, of another pending prosecution based on his actions on July 26, 2003. Accordingly, defendant did not waive his

mandatory joinder claim by failing to raise it when jeopardy attached in 03M1776.

### 2.

However, we agree with the trial court's alternative ruling that the mandatory joinder claim was waived by defendant's failure to raise it before jeopardy attached in this case, which occurred when the jury was empanelled and sworn on September 14, 2004.

In support of this alternative finding, the trial court cited *People v. Bossert*, 722 P.2d 998 (Colo.1986). At the time *Bossert* was decided, section 18–1–408(2) did not include its current final clause, beginning with "except that," which sets forth the circumstances in which a defendant is deemed to have waived a compulsory joinder claim. Although the statute did not include any provision concerning waiver, the supreme court held in *Bossert* that, where a defendant failed to raise the issue of compulsory joinder "prior to the time at which jeopardy attaches in the second prosecution," such claim was waived. *Id.* at 1012. In so holding, the court reasoned that, where the defendant does not raise the issue of joinder until after the second trial, the public policy reasons for the compulsory joinder rule—namely, protection of the accused against oppressive sequential prosecutions and conservation of judicial and legal resources—would not be served, because "the harm, if any, has occurred." *Id.* at 1011.

The *Bossert* holding was recognized but found not controlling in *People v. Rogers*, 742 P.2d 912, 916 (Colo.1987) (explaining reasons for *Bossert* rule but finding no waiver where defendant raised compulsory joinder before second trial began). *See also People v. Wilson*, 819 P.2d 510, 515 (Colo.App.1991) (citing *Bossert* for proposition that right to compulsory joinder "may be waived by raising the issue *after* jeopardy attaches in the second prosecution" (emphasis in original)).

Defendant argues that *Bossert* was "legislatively overruled" in 1994, when the General Assembly added the current waiver language, which refers to the "time jeopardy attaches with respect to the first prosecution," but does not further provide that compulsory joinder is waived if the defendant

fails to raise the issue at the time jeopardy attaches in the *second* prosecution. *See* Ch. 181, sec. 2, § 18–1–408(2), 1994 Colo. Sess. Laws 1049. We disagree.

 In construing a statute, we strive to give effect to the intent of the General Assembly and adopt the statutory construction that best effectuates the purposes of the legislative scheme. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). We look first to the plain language of the statute. However, if statutory language is ambiguous, we may rely on legislative history to discern the General Assembly's intent. *Schupper v. Smith*, 128 P.3d 323, 325 (Colo.App.2005); *see* § 2–4–203(1)(c), C.R.S.2007.

 A statute may be ambiguous if it is silent on an issue that would be expected to be within its scope. *See People v. Newton*, 764 P.2d 1182, 1189 (Colo.1988) (silence of statute as to its applicability to crimes committed prior to but continuing beyond its effective date "creates an ambiguity with respect to the reach of the statute"); *see also Buckley v. Chilcutt*, 968 P.2d 112, 117 (Colo. 1998) ("If explicit statutory provisions are ambiguous or silent regarding the matter at issue, we interpret the statute to comport with the legislature's objectives.").

Here, the plain language of the waiver clause added to section 18–1–408(2) in 1994 states that waiver can occur if the defendant fails to object at the time jeopardy attaches with respect to the first prosecution. However, the statute says nothing about whether, as *Bossert* and its progeny recognized, a mandatory joinder claim could also be waived if the defendant knew of the claim before the second prosecution but failed to object. Because the statute is silent as to the legislature's intent in such circumstances, we turn to the legislative history of the 1994 amendment. *See Buckley*, 968 P.2d at 117; *Newton*, 764 P.2d at 1188.

That legislative history shows that the intent of the 1994 amendment was to narrow the circumstances in which a defendant could seek dismissal for noncompliance with the compulsory joinder requirement.

During hearings on the proposed amendment, Raymond Slaughter, Executive Director of the Colorado District Attorneys Council, testified that the amendment was intended to avoid the sort of "procedural trickery" by defendants that was reflected in cases such as *People v. Robinson*, 774 P.2d 884 (Colo.1989), and *People v. McCormick*, 839 P.2d 474 (Colo.App.1992), *rev'd*, 859 P.2d 846 (Colo.1993). In these cases, criminal defendants had obtained dismissal of charges based on the compulsory joinder rule even where, as in *Robinson*, the defendant had entered a guilty plea with knowledge of a pending prosecution arising out of the same criminal episode. David Thomas, District Attorney for the First Judicial District, and Senator Mutzebaugh, the bill's sponsor, testified to the same effect. *See* Hearings on S.B. 94–65 before the House Jud. Comm., 59th General Assembly, 2d Sess. (Mar. 1, 1994).

This view was reiterated in a letter from Slaughter to Representative Tucker, one of the House sponsors of the bill, which was incorporated into the record of the House hearings:

> Section 2 is designed to avoid procedural trickery wherein a defendant or his counsel actually knows of pending prosecutions in other jurisdictions and fails to inform the court and the District Attorney of those pending prosecutions. In this way, a defendant who wishes to avoid the other prosecution based upon a claim of double jeopardy can be successful in doing just that.... We support the bill in its present form ... as it correctly protects against using a procedural loophole.

Letter from Raymond Slaughter to Shirleen Tucker, Colorado State Representative (Mar. 1, 1994).

Slaughter also testified that the amendment was intended to adopt American Bar Association, Standards for Criminal Justice 13–2.3(b) (2d ed.1980). Hearings on S.B. 94–65 before the Senate Jud. Comm., 59th General Assembly, 2d Sess. (Feb. 8, 1994). The standard to which Slaughter referred provides simply: "A defendant's failure to move for joinder constitutes a waiver of any right of joinder as to 'same conduct' or 'single criminal episode' offenses which the defendant knew had been charged."

The legislative history of the 1994 amendment includes no discussion of *Bossert*. Nor does it include any indication that the General Assembly intended the waiver provision it was adding to be the exclusive means whereby a defendant could waive the right to mandatory joinder.

Given the absence of such indication—and, more important, given the testimony showing that the General Assembly's purpose in enacting the 1994 amendment was to narrow the scope of the compulsory joinder statute and preclude defendants from taking advantage of it if they were aware of a compulsory joinder claim but failed to raise it—it would be anomalous to interpret the amendment as impliedly overruling prior case law that was intended to achieve the same purpose. *See* § 2–4–203(1)(a), C.R.S.2007 (directing courts to consider "object sought to be attained" in determining intent of General Assembly). For that reason, we also decline to interpret the statute as intended to exclude any possibility of waiver in situations not expressly enumerated in it. *See People v. Gibson*, 53 Colo. 231, 243, 125 P. 531, 536 (1912) ("The maxim, 'Expressio unius est exclusio alterius,' is not of universal application in the construction of statutes. The legislative intention is to be taken according to the necessity of the matter, and according to that which is consonant to reason and sound discretion." (quoting *Town of Trinidad v. Simpson*, 5 Colo. 65, 66 (1879))).

Thus, we conclude that the trial court did not err when, relying on *Bossert*, it ruled that defendant waived his mandatory joinder claim by failing to raise his objection until after jeopardy attached in this case.

In so concluding, we reject defendant's contention that he preserved his compulsory joinder objection when, at an August 5, 2004, motions hearing in this case, defense counsel stated that he was "concerned that we get into a situation where Mr. Carey is being charged for something that occurred in another jurisdiction and for something he's already pled guilty to." Section 18–1–408(2) requires joinder only of offenses known to

the district attorney that "were committed within the district attorney's judicial district." Thus, defense counsel's cursory reference at the August 5 hearing to defendant's having pled guilty to "something that occurred in another jurisdiction" would not have suggested to the trial court that he was seeking dismissal under that statute.

Finally, we also reject defendant's contention that, because he had not received discovery concerning the conduct forming the basis of his prior conviction, he did not know until after the second trial commenced that the harassment by stalking count was based on the same criminal episode as that at issue in case number 03M1776. Attached to the prosecution's "Notice of the People's Intention to Introduce Res Gestae Evidence," filed August 10, 2004—over one month before the beginning of trial in this case—was the amended complaint for revocation of deferred judgment in case number 02M1818. The complaint sought such revocation based on the charges in 03M1776 and explained those charges as follows:

> Arapahoe County Court records reflect charges were filed against the defendant on July 28, 2003, for the following: Count 1: Harassment-telephone-threat/obscene (M3) and Count 2: Domestic Violence (SE). The offenses allegedly occurred on July 26, 2003, in Arapahoe County, Colorado. A Pre–Trial Conference is scheduled on August 28, 2003, at 8:15 am.

Thus, there is no basis for concluding that the defense lacked actual knowledge of the offense charged in 03M1776 until after the trial in this case began.

In sum, the trial court did not err in concluding that defendant waived his mandatory joinder claim.

## C. Due Process

We are also unpersuaded by defendant's contention that his due process rights were violated when the prosecution breached an "implied promise" in his plea agreement in 03M1776 that it would not prosecute him again for his conduct of July 26, 2003.

Because defendant did not raise this contention in the trial court, it would not entitle him to relief unless it amounted to plain error. *See People v. Stewart,* 55 P.3d 107, 119–20 (Colo.2002). We find no error, plain or otherwise.

When a defendant reasonably and detrimentally relies on the prosecution's promises in a plea agreement, due process requires enforcement of the agreement. *St. James v. People,* 948 P.2d 1028, 1032 (Colo. 1997); *see People v. Macrander,* 756 P.2d 356, 361–62 (Colo.1988) (defendant was entitled to specific performance of promise expressly made by prosecutor at time of plea agreement).

There is nothing in the limited record before us to suggest that the plea agreement in 03M1776 included any express promise regarding future prosecutions, and defendant does not so contend. Rather, he asserts that the plea agreement included an implied promise not to prosecute him again based on his actions on July 26, 2003. However, defendant could not reasonably have relied on such a promise in light of section 18–1–408(1). That statute, which defendant was presumed to know, *see People v. Hayward,* 55 P.3d 803, 806 (Colo.App.2002) (every person is generally presumed to know the law), provides that a defendant whose conduct establishes the commission of more than one offense may be prosecuted for each such offense.

In light of section 18–1–408(1), defendant's reliance on *State v. Nelson,* 23 Conn.App. 215, 579 A.2d 1104 (1990), for the proposition that the People must expressly reserve the right to bring a subsequent prosecution based on the same conduct, is unavailing. In *Nelson,* the court held that a plea agreement on a motor vehicle assault charge precluded reprosecution of the defendant for manslaughter upon the victim's death, because the state had not reserved its right to bring such further prosecution. However, there is nothing in that case to indicate that Connecticut had a statute which, like section 18–1–408(1), expressly permits prosecution for more than one offense if the defendant's conduct establishes the commission of more than one offense. *See also In re Keijam T.,* 226 Conn. 497, 628 A.2d 562, 567 (1993) (limiting *Nelson* to its unique circumstances and

rejecting defendant's argument that, under *Nelson,* the state was "estopped from charging a greater offense than that pleaded to" by its failure to reserve the right to future prosecution in the plea agreement).

## II. Sufficiency of the Evidence

Defendant next contends that the evidence was insufficient to support the harassment by stalking conviction because (1) it did not establish that he repeatedly contacted B.B. "in connection with" any credible threat, as required under section 18–9–111(4)(b)(II), and (2) there was no evidence that B.B. suffered "serious emotional distress," as required under section 18–9–111(4)(b)(III). We disagree.

When determining a challenge to the sufficiency of the evidence, an appellate court must consider whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charged crime beyond a reasonable doubt. *People v. Rivas,* 77 P.3d 882, 891 (Colo.App.2003); *see Kogan v. People,* 756 P.2d 945, 950 (Colo.1988), *abrogated on other grounds by Erickson v. People,* 951 P.2d 919 (Colo.1998).

### A. Communications "in Connection with" a Credible Threat

Under section 18–9–111(4)(b)(II), a person commits stalking if the person knowingly "[m]akes a credible threat to another person and, in connection with such threat, repeatedly makes any form of communication with that person ... regardless of whether a conversation ensues." For purposes of that statute, a "credible threat" means "a threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety.... Such threat need not be directly expressed if the totality of the conduct would cause a reasonable person such fear." § 18–9–111(4)(c)(II), C.R.S. 2007. Conduct "in connection with" a credible threat means "acts which further, advance, promote, or have a continuity of purpose, and may occur before, during, or after the credible threat." § 18–9–111(4)(c)(I), C.R.S.2007.

Here, B.B. testified at trial to statements made to her by defendant—for example, telling her in a telephone call on July 26 that, "when I go to jail, I get out, and then you're dead"—that would satisfy the statutory definition of credible threat. Defendant does not dispute that he made a credible threat, but he states that none of the additional statements or phone calls he made were "in connection" with any such threat because they did not "promote or advance" the threat.

However, under section 18–9–111(4)(c)(I), "in connection with" includes acts that "have a continuity of purpose" with the threat, whether they occur before, during, or after the threat. Here, according to B.B.'s testimony, defendant came to her restaurant on the morning of July 27 and again told her, "you are dead," or "you are toast." After defendant was arrested later on July 27 for his actions on July 26, he left several voice mail messages for B.B. The jury listened to an audiotape of the voice mails. A July 31 voice mail message stated:

> It's come to my attention that you've been fucking with two of my brothers. One that owes you money and one you put in jail. The one that owes you money, I'd forget it. The one you put in jail, I would drop the charges. If you don't do this, I guess we'll meet. I don't want that. You don't want that. Thank you very much. Just an informative call.

Although defendant testified that it was not he who left that message, he did not deny leaving the other messages, and the jury could assess whether the voices it heard on the audiotape were all of the same person.

When viewed in the light most favorable to the prosecution, the evidence was sufficient to support a conclusion by a reasonable jury that defendant's subsequent communications with B.B. shared a continuity of purpose with his prior threat on her life. *See People v. Suazo,* 87 P.3d 124, 126–27 (Colo.App.2003) (evidence that, after defendant threatened to kill victim, he contacted her numerous times and repeatedly asked to see her was sufficient to permit reasonable jury to conclude that the later contacts shared a continuity of purpose with the initial threat).

### B. Serious Emotional Distress

 Under section 18–9–111(4)(b)(III), stalking is committed when a person knowingly

> [r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress, and does cause that person ... to suffer serious emotional distress. For purposes of this subparagraph (III), a victim need not show that he or she received professional treatment or counseling to show that he or she suffered serious emotional distress.

Contrary to defendant's contention, the evidence was sufficient to establish "serious emotional distress" under section 18–9–111(4)(b)(III). B.B. testified that she was "really beside [herself] and didn't know what to do" after defendant's July 26 telephone calls, and so she left her house and went to the neighbor's. After his subsequent call suggesting that a friend of defendant's might harm B.B., she was "very much" afraid and increased her level of awareness of her surroundings. She described her emotional state as: "Cars go by at the restaurant, your heart jumps, you're always panicking." She later testified that she was "very fearful" and "very distressed" because she realized that defendant could easily act on his threats.

Again, this testimony regarding the victim's mental state and her actions reflecting that mental state, viewed under the standards set forth above, was sufficient to support a finding beyond a reasonable doubt that the victim suffered severe emotional distress. *See People v. Cross*, 114 P.3d 1, 6 (Colo.App.2004) (evidence of serious emotional distress under stalking statute was sufficient, where victim testified that defendant's behavior caused her to change her work schedule, take days off from work, and feel unsafe; that she was nervous and had trouble sleeping; and that she felt she was constantly being watched by defendant) *(Cross I)*, *rev'd in part on other grounds*, 127 P.3d 71 (Colo.2006) *(Cross II); People v. Sullivan*, 53 P.3d 1181, 1185 (Colo.App.2002) (evidence that wife took alternate routes to her destinations, was afraid, felt she was constantly being watched, had stomach aches because of her feelings, and had trouble sleeping was sufficient to show serious emotional distress caused by stalking).

### III. Jury Instructions

Defendant raises four contentions of error regarding the trial court's jury instructions. He argues that the court erred in not instructing the jury on (1) the lesser nonincluded offense of telephone harassment, (2) the definition of serious emotional distress, (3) the mens rea for harassment by stalking under section 18–9–111(4)(b)(III), and (4) the need for unanimity on the elements of stalking under section 18–9–111(4)(b)(II). We disagree.

 A trial court has a duty to instruct a jury properly concerning each element of an offense. *People v. Salazar*, 920 P.2d 893, 897 (Colo.App.1996). However, the court has substantial discretion in formulating jury instructions as long as they are correct statements of the law and fairly and adequately cover the issues presented. *People v. Williams*, 23 P.3d 1229, 1232 (Colo. App.2000).

 In determining whether the trial court has adequately instructed the jury, we review the instructions as a whole. *See People v. Trujillo*, 83 P.3d 642, 645 (Colo.2004). Jury instructions phrased in the language of the applicable statute are generally sufficient. *People v. Gallegos*, 950 P.2d 629 (Colo. App.1997).

### A. Telephone Harassment

 We first reject defendant's contention that the trial court erred in not instructing the jury that it could convict him of the lesser nonincluded offense of telephone harassment.

 A lesser nonincluded offense instruction is "tantamount to a defendant's theory of the case instruction." *People v. Lowry*, 160 P.3d 396, 399 (Colo.App.2007). A defendant has the right to a lesser nonincluded offense instruction if the record provides a rational basis to support a "verdict acquitting

[the defendant] of a greater offense . . . and convicting [the defendant] of the lesser offense." *Trujillo*, 83 P.3d at 645 (quoting *People v. Bartowsheski*, 661 P.2d 235, 242 (Colo.1983)). However, "the mere chance that a jury may reject uncontroverted testimony and convict on the lesser charge does not require the trial court to instruct the jury on the lesser charge." *People v. Hall*, 59 P.3d 298, 300 (Colo.App.2002) (quoting *People v. Ramirez*, 18 P.3d 822, 827 (Colo.App. 2000)). Further, "there is no right to a jury instruction on a lesser offense if the element that distinguishes the greater from the lesser offense is uncontested." *Hall*, 59 P.3d at 300.

The court may instruct the jury on a lesser nonincluded offense only if "the defendant requests it or consents to it." *People v. Skinner*, 825 P.2d 1045, 1047 (Colo.App. 1991); *see Lowry*, 160 P.3d at 397.

Here, defendant tendered two proposed jury instructions on telephone harassment, a class three misdemeanor, as described in section 18–9–111(1)(e). Tendered instruction 23 provided:

> The evidence has also given rise to the question of telephone harassment. The elements of telephone harassment are:
> 1. That the defendant
> 2. in the state of Colorado, at or about [July] 26—[July] 27
> 3. with intent to harass, annoy, or alarm another person, the defendant
> 4. initiated communication with a person, anonymously or otherwise,
> 5. by telephone,
> 6. in a manner intended to harass or threaten bodily harm or property damage.

Tendered instruction 22 provided:

> The elements of harassment are:
> 1. That the defendant
> 2. in the state of Colorado, at or about the date and place charged,
> 3. with intent to harass, annoy, or alarm another person, the defendant
> 4. initiated communication with a person, anonymously or otherwise,
> 5. by telephone,
> 6. in a manner intended to harass or threaten bodily harm or property damage.

At the jury instruction conference, the trial court declined to give tendered instruction 23 in light of a limiting instruction that was being given to the jury, which stated, in relevant part:

> Evidence that phone calls were placed by [defendant] to [B.B.] on July 26, 2003 and July 27, 2003, should not be considered as evidence as to count four [harassment by stalking], but the conversation between [defendant] and [B.B.] during those phone calls may be considered as evidence as to count four.

In light of that limiting instruction, the court refused defendant's tendered telephone harassment instruction based on calls made on the same dates, observing: "I don't think you're entitled to take out those two days [July 26 and 27] and . . . say 'jury, you're entitled to find him guilty of harassment by telephone' based on telephone calls made on those days."

The trial court did not err in refusing to give tendered instruction 23 for the reason it stated. Because the jury had been instructed that telephone calls placed by defendant on those dates were not to be considered, there would have been no evidence on which the jury could have returned a verdict finding defendant guilty of telephone harassment on those dates.

Nor did the court err in refusing to give defendant's tendered instruction 22, which did not limit the date of the phone harassment offense to July 26 and 27, but simply referred to "at or about the date and place charged."

As the People point out, there was some confusion at the jury instruction conference about defendant's reason for tendering the instruction. At one point, defense counsel suggested that it was appropriate to give the instruction as a definition of harassment. However, counsel also advised the court that his "primary reason" for crafting instruction number 22, as with instruction number 23, was to instruct on telephone harassment:

The Court: Let me see if I can cut to the heart of the issue. Both of your proposed Instructions are on the same theory, telephone harassment.

[Defense counsel:] Yes, Judge.

The Court: Okay. Go ahead.

[Defense counsel:] That was the primary reason that I had tendered it.

Additionally, I was simply tendering that because I thought the Court would need—and I think we already addressed it, but that we did need a harassment instruction in there as well. And so that was just the elemental to define "harassment."

When the court then stated that it would refuse the tendered instruction because another instruction adequately defined "harassment," defense counsel did not make any further argument.

Thus, defendant arguably waived further review of this contention. However, even if we assume defendant adequately preserved his claim that the jury should have been instructed on misdemeanor telephone harassment in accordance with his tendered instruction 22, we conclude the court did not err in refusing to do so. Upon review of all the evidence, we conclude there was no rational basis on which the jury could have acquitted defendant of harassment by stalking under section 18–9–111(4)(b)(II) but convicted him of telephone harassment under section 18–9–111(1)(e).

As noted, harassment by stalking requires a "credible threat" and, "in connection with" such threat, that the defendant "repeatedly makes any form of communication" with the person threatened. Telephone harassment requires proof of a telephone or computer communication that is obscene or is made "in a manner intended to harass or threaten bodily injury or property damage." § 18–9–111(1)(e). This is not a case in which a victim claimed that phone calls were made while the defendant denied making them or disputed the contents of the calls. Rather, here, the jury heard an audiotape of the voice mail messages left by defendant. Defendant admitted that he had left all but one of the messages. Based on the content of the messages on the audiotape, no reasonable jury could conclude that they did not evidence a credible threat.

More important, defendant does not challenge the jury's finding that a credible threat was made. Instead, he argues, as he did in challenging the sufficiency of the evidence, that the jury might have concluded that the subsequent telephone calls were not made "in connection with" any credible threat, and then convicted him only of telephone harassment. However, we have already rejected defendant's interpretation of "in connection with." Having heard the audiotape, the jury could not have concluded that defendant (1) made no communication with B.B. that shared a continuity of purpose with his prior threat, but, (2) nevertheless, was guilty of telephone harassment because he made the audiotaped telephone communications in a manner "intended to harass or threaten" her. The latter finding would necessarily satisfy the element of harassment by stalking that required repeated communications "in connection with" a credible threat.

Because there was no rational basis on which the jury could acquit defendant of harassment by stalking but convict him of misdemeanor telephone harassment, the trial court properly declined to instruct the jury on the latter offense. *See Trujillo*, 83 P.3d at 645; *Hall*, 59 P.3d at 299; *see also Apodaca v. People*, 712 P.2d 467, 475 (Colo.1985) (instruction on lesser included offense of attempted second degree kidnapping properly refused where undisputed evidence established completed crime of second degree kidnapping); *Graham v. People*, 199 Colo. 439, 441, 610 P.2d 494, 495 (1980) (defendant not entitled to theft instruction where his own testimony established that he had committed the greater offense of simple robbery); *People v. Lucas*, 992 P.2d 619, 626 (Colo.App. 1999) (defendant charged with robbery and first degree murder was not entitled to instruction on lesser nonincluded offense of assault where uncontroverted evidence established robbery); *People v. Price*, 969 P.2d 766, 768 (Colo.App.1998) (no rational basis for acquitting defendant of theft of amount greater than $15,000 but convicting her of theft of lesser amount where amount stolen concededly was in excess of $15,000); *People*

*v. Moore*, 902 P.2d 366, 370 (Colo.App.1994) (where evidence showed defendant's blows contributed to victim's death, there was no rational basis to convict of third degree assault and acquit of manslaughter), *aff'd*, 925 P.2d 264 (Colo.1996); *People v. Ortega*, 899 P.2d 236, 238 (Colo.App.1994) (where evidence undisputed that defendant was in custody, no rational basis to acquit of second degree assault and convict of obstructing a police officer).

### B. Additional Jury Instruction Issues

 For the following reasons, defendant is not entitled to relief based on his additional contentions of error regarding the jury instructions.

- Because the phrase "serious emotional distress" is understandable to persons of common intelligence, it was within the trial court's discretion to refuse to instruct the jury on the definition of "severe emotional distress" found in the civil jury instructions, as defendant requested. *See People v. Dunlap*, 975 P.2d 723, 751–52 (Colo.1999); *People v. Thoro Products Co.*, 45 P.3d 737, 745 (Colo.App. 2001), *aff'd*, 70 P.3d 1188 (Colo.2003); *Cross I*, 114 P.3d at 7 (absence of definition of "serious emotional distress" did not render section 18–9–111(4)(b)(III) unconstitutionally vague). Further, the court's definitional instruction included the language from section 18–9–111(4)(b)(III) stating that "a [person] need not show that he or she received professional treatment or counseling to show that he or she [has] suffered serious emotional distress." That language indicates that the General Assembly did not intend that the "serious emotional distress" required to establish harassment by stalking had to rise to the level of "severe emotional distress" required to establish the tort of outrageous conduct. *See* CJI–Civ. 4th 23:4 (Cum.Supp. 2004).

- Defendant argues for the first time on appeal that the elemental instruction on harassment by stalking under section 18–9–111(4)(b)(III) was erroneous because it did not include the required mental state,

"knowingly." However, whether defendant's communications with B.B. were made "knowingly" was not a contested issue at trial, and the record affords no basis for concluding that they were other than knowing communications. Thus, omission of the mens rea element was not plain error. *See People v. Miller*, 113 P.3d 743, 749 (Colo.2005); *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo. 2003); *see also Cross II*, 127 P.3d at 77–78 ("knowingly" refers only to conduct element under section 18–9–111(4)(b)(III)).

- The trial court did not err in refusing to give an instruction requiring the jurors to agree unanimously as to which communications established harassment by stalking under section 18–9–111(4)(b)(II). When a defendant is charged with crimes occurring in a single transaction, the prosecution does not have to elect among the acts that constitute the crime, and a unanimity instruction need not be given. *Melina v. People*, 161 P.3d 635, 639–40 (Colo.2007) (evidence of defendant's communications with several people constituted a single transaction of solicitation; thus, unanimity instruction was not required). Here, too, the harassment by stalking conviction required the prosecution to show a course of conduct—that is, a credible threat and repeated communications in connection with such threat—that constituted a single transaction. Thus, the jury had to find beyond a reasonable doubt that such repeated communications took place, but it did not have to agree unanimously on which of them established the harassment by stalking offense.

The judgment is affirmed.

Judge DAILEY and Judge FURMAN concur.